# IN THE SUPREME COURT OF IOWA

No. 11–1448

Filed May 24, 2013

**TERRY CHRISTIANSEN,**

Appellant,

vs.

**IOWA BOARD OF EDUCATIONAL EXAMINERS,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Johnson County, Robert E. Sosalla, Judge.

Petitioner appeals district court decision affirming on the merits the disciplinary action of the Iowa Board of Educational Examiners and seeks further review of court of appeals decision holding petition for judicial review was untimely. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Michael J. Pitton of Pitton Law, P.C., Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Julie J. Bussanmas, Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

This appeal presents the opportunity for our court to clarify the deadline to file a petition for judicial review of an agency's resolution of a contested case complicated by multiple applications for rehearing. A divided court of appeals interpreted Iowa Code section 17A.19(3) (2009) to include a "trap for the unwary." The petitioner, Terry Christiansen, a school employee involved in a physical altercation with a student, challenges the discipline imposed by the Iowa Board of Educational Examiners (Board). He filed his petition for judicial review in district court within thirty days of the Board's denial of his application for rehearing, but before the Board's final decision on the State's application for rehearing. The district court ultimately affirmed the Board's decision on the merits. Christiansen appealed, and the court of appeals, with separate concurring and dissenting opinions, reversed the district court, holding Christiansen's "premature" petition never invoked the district court's jurisdiction.

On further review, for the reasons that follow, we hold that the proper time to file a petition for judicial review is within thirty days *after* the agency's final decision on the last application granted for rehearing, even if more than thirty days has transpired since the denial of the party's own application for rehearing. Christiansen initially appealed prematurely before the Board's final decision on the State's rehearing application, but he later perfected his appeal to district court. We affirm the district court decision on the merits upholding the Board's decision as supported by substantial evidence.

## I. Background Facts and Proceedings.

This case arises from Christiansen's altercation with M.K., a fourteen-year-old student. Christiansen was employed as a middle

school teacher and coach for the West Branch Community School District. On September 19, 2008, he was coaching the middle school football team that practices at the high school field. His duties included driving the bus with the team of about thirty students back to the middle school after practice. The incident occurred while the bus was parked at the high school. Some players were on the bus with Christiansen waiting for their teammates to finish showering. A water fight broke out in the back of the bus where M.K. was sitting, while Christiansen was in the driver's seat. Christiansen shouted at the participants several times to stop the fight and clean up the water, after which Christiansen saw M.K. give him "the finger." Christiansen ordered M.K. to get off the bus. M.K. remained seated and asked, "Why?" and "What did I do?"

Christiansen came down the aisle towards M.K., who was standing up getting his bag. As M.K. started walking forward, Christiansen stepped out of the aisle and stood in front of M.K.'s seat so M.K. could pass. What happened next is disputed. Christiansen testified that he put his right hand on M.K.'s left shoulder to guide him as he went to leave the bus. Christiansen admits that as he was doing this he "stumbled" and that he was "sure to everyone on the bus it looked like [he] was pushing [M.K.] out the bus." By contrast, M.K. testified that as Christiansen approached him he shouted, "Get the hell off the bus," and, as he walked down the aisle, "[Christiansen] grab[bed] [him] with his right arm on [M.K.'s] right arm and thr[ew] [him] down the aisle five to seven seats." M.K. got off the bus.

Later that night, M.K. told his mother what had happened on the bus. After M.K.'s parents talked with some of the football players who were on the bus and Christiansen, they reported the incident to the West Branch police. Officer Ben Isbell took photographs of a bruise on

M.K.'s right upper arm that night. The incident was also brought to the attention of middle school Principal Sara Oswald and West Branch School Superintendent Craig Artist.

The following Monday, Oswald conducted videotaped interviews of the students who had been on the bus. Half of the students denied having witnessed the physical contact between Christiansen and M.K. Fifteen students, however, reported seeing Christiansen grab M.K. and shove, push, or throw him down the aisle. A DVD of the interviews was turned over to the West Branch police. Christiansen was placed on administrative leave with pay and later terminated after a hearing before the school board. M.K.'s parents and Artist filed administrative complaints with the Iowa Board of Educational Examiners, the state agency responsible for the licensing, discipline, and regulation of school teachers, administrators, and coaches. *See* Iowa Code ch. 272. On February 5, 2009, the Board issued a statement of charges against Christiansen alleging "student abuse" in violation of Iowa Administrative Code rule 282—25.3(1)(*e*). The Board alleged Christiansen "physically grabbed a student by the arm, lifted him up, and shoved him forward. . . . The student's arm was injured as a result of the incident." The Board further alleged Christiansen "has been previously disciplined at the local level for incidents of physical abuse or use of excessive force."

Meanwhile, criminal charges were filed against Christiansen for serious assault causing bodily injury, later amended to simple assault. The case proceeded to trial. M.K.'s testimony differed on certain details from his prior statements, but he stuck to his story that Christiansen had grabbed his arm and shoved him. M.K. denied giving "the finger" or joining in the water fight. He was contradicted on those points by several student witnesses. Several students who told Oswald that Christiansen

had shoved or pushed M.K. in their videotaped interviews admitted under oath at trial they did not see Christiansen touch M.K. But, several other student–witnesses corroborated M.K.'s testimony that Christiansen had grabbed him and propelled him down the aisle. Officer Isbell testified that he saw and photographed bruising and redness on M.K.'s upper right arm the night of the incident. Christiansen testified he placed his hand on M.K.'s shoulder to guide him, and then stumbled, causing him to accidentally push M.K. On March 10, the jury acquitted Christiansen of simple assault after thirty minutes of deliberation.

On June 1, an administrative law judge (ALJ) conducted an evidentiary hearing on the contested case. Christiansen, M.K., Oswald, and Artist testified in person. The DVD with Oswald's student interviews was admitted into the evidentiary record by stipulation without objection, as were transcripts of the testimony in the criminal trial. Over Christiansen's objections, the ALJ heard evidence concerning two prior incidents resulting in written reprimands. The first occurred on April 20, 2007, while Christiansen was driving a school bus with the track team he coached. A student called Christiansen an "idiot" after he took a wrong turn. As the student exited the bus, Christiansen grabbed his shirt. The student slipped to the floor of the bus where he was briefly held down by Christiansen. The student's shirt was torn. Artist imposed a three-day suspension, which Christiansen challenged. An arbitrator ultimately set aside the suspension but allowed a written reprimand. The second incident happened in November 2007. A student violated school rules by wearing low-hanging pants. Christiansen duct-taped the waist of the pants to the skin of the offender, leaving red marks. The written reprimands for these two incidents were issued in March and January 2008, respectively.

The ALJ issued a proposed decision on June 23, 2009, recommending a ninety-day suspension of Christiansen's teaching license and permanent revocation of his physical education and coaching endorsements. The ALJ, considering the testimony of Christiansen and the other witnesses, found "[Christiansen]'s version of the events [was not] credible." The ALJ explained as follows:

> The majority of students who witnessed the encounter saw [Christiansen] grab M.K.'s arm and shove him forward. An accidental pushing would not result in M.K.'s being propelled several seat rows forward. And most damaging, the bruising on M.K.'s upper right arm is consistent with [Christiansen] grabbing M.K. and shoving him forward.

The ALJ's proposed decision concluded that "[b]y intentionally grabbing a student athlete's arm and shoving him as punishment for misbehavior, [Christiansen] committed physical abuse in violation of 282 IAC 25.3(l)(e)(l)."

The ALJ determined that, although Christiansen's "nearly identical" prior bus incident could not be used "to prove that [Christiansen] committed the act he is accused of," it was relevant to show that Christiansen's physical contact with M.K. was not accidental and helped determine the appropriate sanction.

Both sides appealed to the Board. On November 24, the Board accepted as its "final ruling" the ALJ's proposed decision after striking one paragraph referring to the prior disciplinary charges. Both sides timely applied for rehearing. The State's application sought revisions to the order to provide that the evidence of prior discipline was offered "to assist in determining an appropriate sanction—only if the present violation of student abuse had been established." The State's application did not seek any change in the penalty imposed. Christiansen's application sought a rehearing on all issues and to reopen the

evidentiary record for additional testimony. On December 16, the Board denied Christiansen's application for rehearing. By separate order the same day, the Board granted the State's application for rehearing and set a briefing schedule. The State and Christiansen each filed a rehearing brief with the Board on January 5, 2010. Christiansen argued the Board should give no weight to the prior discipline and urged "that the Board reverse its prior decision, enter an order striking evidence of prior allegations . . . and find that [he] did not commit an act of student abuse."

On January 13, twenty-eight days after the Board denied his application for rehearing, Christiansen filed his petition for judicial review in the Iowa District Court for Johnson County. On January 25, the State and Christiansen each filed a rehearing reply brief with the Board. Christiansen argued his district court filing deprived the Board of jurisdiction. The State's rehearing reply brief argued the Board continued to have jurisdiction because Christiansen's district court filing was premature. On January 28, the State filed a motion to dismiss the district court action, alleging failure to exhaust administrative remedies and lack of finality. The State argued, "Because the Board has not yet issued a final order on the State's Application for Rehearing, judicial review is premature." On February 8, Christiansen filed a resistance to the State's motion to dismiss his district court action. Christiansen argued the Board's action was final as to him because his application for rehearing had been denied and the State's pending application "relates only to the determination of an evidentiary question which, if granted, would not provide [him] sufficient relief."

On March 3, the Board issued an order adopting the State's proposed revisions to the discussion of Christiansen's prior discipline

contained in the Board's ruling. This March 3 order provided that "with the above modifications [the ALJ's proposed decision] will stand as the Board's final ruling." The penalties imposed on Christiansen remained the same. Christiansen did not amend his pending petition for judicial review to refer to the March 3 decision of the Board, nor did he file a separate petition for judicial review of the March 3 decision. However, on April 9, Christiansen filed a "Response" in district court that attached the Board's March 3 order, which he argued rendered "moot" the State's motion to dismiss his petition as premature.

On April 16, at 2:33 p.m., the district court (Bergan, J.) granted the State's motion to dismiss, concluding that, "with the particular application for rehearing relating to evidentiary issues pending—it cannot be said that final agency action has been achieved." At 4:15 p.m. that same day, Christiansen filed an "Amended Petition for Judicial Review" in the same action, which expanded his appeal to include the Board's March 3 final order. On April 26, the State moved to strike or dismiss the amended petition because it was filed outside the thirty-day deadline to appeal the Board's March 3 final decision. That same day, Christiansen filed a motion to amend and enlarge the April 16 ruling on grounds the court had "overlooked" the Board's March 3 order—"the final order the [State] claimed had not been entered." The State resisted this motion, arguing that even if the court considered Christiansen's April 9 response to be an attempt to amend his petition, it was still untimely because it was filed more than thirty days after the March 3 "final decision." Christiansen responded that his amendment addressing the March 3 order related back to his petition for judicial review "pending continuously throughout the thirty day period following the alleged final action of the agency on March 3."

On July 27, the same district court judge ruled on the pending motions. The district court noted that it was unaware of the Board's March 3 order when it issued its April 16 ruling because a law clerk had that part of the court file. The district court concluded it had jurisdiction to proceed. The district court granted Christiansen's motion to amend, denied the State's motion to strike or dismiss, accepted the April 16 amended petition for judicial review, corrected its April 16 order, and ruled that "[t]he case is reinstated and shall proceed."

On August 10, 2011, a different district court judge (Sosalla, J.) filed a decision on the merits upholding the Board's decision as supported by substantial evidence. The district court rejected Christiansen's challenge to the Board's use of his prior discipline. Christiansen appealed, and we transferred the case to the court of appeals.

On October 31, 2012, a three-judge panel issued a decision with a separate concurrence and dissent. No member of the court of appeals reached the merits. Two judges concluded the district court lacked jurisdiction, relying on *Cooper v. Kirkwood Community College*, 782 N.W.2d 160, 167 (Iowa Ct. App. 2010). The concurring opinion acknowledged that "[w]ith no interpretive guidance from the courts on this point, Christiansen fell into a trap for the unwary." This was because

> [b]y the time the district court dismissed his first petition for judicial review as having been filed too early, it had been over thirty days since the board ruled on the State's application for rehearing. Thus, his amended petition for judicial review was filed too late. Consequently, neither filing was "just right."

The dissenting judge, citing her *Cooper* dissent, noted that "there is [an] even stronger reason to reach the merits in this case because

Christiansen filed his petition for judicial review within thirty days of the denial of his own application for rehearing."

We granted Christiansen's application for further review.

## II. Scope of Review.

Appellate review of the contested case proceeding of a licensing board is for correction of errors at law. *Houck v. Iowa Bd. of Pharmacy Exam'rs*, 752 N.W.2d 14, 16 (Iowa 2008). "We review the district court decision by applying the standards of the [Iowa] Administrative Procedure Act [IAPA] to the agency action to determine if our conclusions are the same reached by the district court." *Am. Eyecare v. Dep't of Human Servs.*, 770 N.W.2d 832, 835 (Iowa 2009) (citation and internal quotation marks omitted). We interpret a statute de novo in the absence of a delegation of interpretive authority to the agency. *Houck*, 752 N.W.2d at 17. "We review an agency's factual findings for substantial evidence based on the record viewed as a whole." *Id.* (citing Iowa Code § 17A.19(10)(*f*)).

## III. District Court's Jurisdiction.

Before considering the merits of this judicial review action, we must first determine whether we have the authority to decide the appeal. *See City of Des Moines v. City Dev. Bd.*, 633 N.W.2d 305, 309 (Iowa 2001). District courts exercise appellate jurisdiction over agency actions on petitions for judicial review. *Anderson v. W. Hodgeman & Sons, Inc.*, 524 N.W.2d 418, 420 (Iowa 1994). "Where a party attempts to invoke the district court's appellate jurisdiction, compliance with statutory conditions is required for the court to acquire jurisdiction." *Id.* "A timely petition for judicial review from an administrative decision is a jurisdictional prerequisite." *City of Des Moines*, 633 N.W.2d at 309.

The IAPA provides that a "party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any *final* agency action is entitled to judicial review thereof under this chapter." Iowa Code § 17A.19(1) (emphasis added). In construing this section, we are to "remember . . . that a purpose of the IAPA is to 'simplify the process of judicial review . . . as well as increase its ease and availability.'" Arthur Earl Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, the Rulemaking Process*, 60 Iowa L. Rev. 731, 758 (1975) (quoting Iowa Code § 17A.1(3)).

The State argues and the court of appeals held that the district court lacked jurisdiction over Christiansen's petition for judicial review because he filed it prematurely before the Board issued its final decision and then failed to timely appeal the Board's subsequent final decision on the State's application for rehearing. Christiansen argues he timely filed his petition for judicial review within thirty days of the Board's denial of *his* application for rehearing, as required by the first sentence of section 17A.19(3). The State, in turn, argues the Board's action was not "final" at the time Christiansen filed his petition in district court because the Board had granted the State's application for rehearing but had not yet issued a final decision on rehearing. The State, thus, contends the third sentence of section 17A.19(3) controls.

We begin our analysis with the text of section 17A.19(3), which provides:

> 3. *If a party files an application under section 17A.16, subsection 2, for rehearing with the agency, the petition for judicial review must be filed within thirty days after that application has been denied or deemed denied.* If a party does not file an application under section 17A.16, subsection 2, for rehearing, the petition must be filed within thirty days

> after the issuance of the agency's final decision in that contested case. *If an application for rehearing is granted, the petition for review must be filed within thirty days after the issuance of the agency's final decision on rehearing.* In cases involving a petition for judicial review of agency action other than the decision in a contested case, the petition may be filed at any time petitioner is aggrieved or adversely affected by that action.

Iowa Code § 17A.19(3) (emphasis added). We have not previously addressed the deadline for filing a petition for judicial review when the opposing parties each file applications for rehearing in the agency proceeding. The closest Iowa appellate decision on point is *Cooper*, 782 N.W.2d at 165–67. Although the analysis in that case provides guidance, the case is distinguishable.

Debra Cooper filed a claim for workers' compensation benefits nearly two years after her last day of work. *Cooper*, 782 N.W.2d at 162. The employer raised affirmative defenses that her claims were time-barred. *Id.* The agency ultimately determined Cooper's claims "were barred by the notice provisions of Iowa Code section 85.23, but were not barred by the two-year period of limitations of . . . section 85.26." *Id.* at 163. The employer alone filed an application for rehearing that sought reconsideration of the limitations defense. *Id.* Before any agency decision on that application, Cooper filed a petition for judicial review in district court. *Id.* The agency then denied the employer's application on grounds Cooper's court filing deprived the agency of jurisdiction. *Id.* The employer challenged the district court's jurisdiction, but the district court affirmed the agency decision on the merits. *Id.* at 163–64. A divided court of appeals reversed, holding the district court lacked jurisdiction. *Id.* at 165. Specifically, the majority concluded "Cooper did not appeal from a final agency decision as required by section 17A.19" because the employer's pending application for rehearing rendered the

agency's decision "provisional or conditional until the application [was] ruled upon." *Id.* The majority interpreted section 17A.19(3) to limit the time for filing a petition for judicial review to " 'within thirty days *after* the issuance of the agency's final decision on rehearing.' " *Id.* at 167 (quoting Iowa Code § 17A.19(3) (emphasis added)) ("We find the statutory language clearly requires a party to wait until the application [for rehearing] has been resolved by the agency before filing for judicial review.").

In this case, the court of appeals majority followed *Cooper* to hold that Christiansen filed his petition for judicial review prematurely because the Board had not issued its final decision on the State's application for rehearing. We agree *Cooper* correctly applied Iowa law when only one party files an application for rehearing in the agency proceeding. In that situation, the petition for judicial review should be filed within thirty days *after* the final decision on the application for rehearing. *See Fee v. Emp't Appeal Bd.*, 463 N.W.2d 20, 22 (Iowa 1990) (applying section 17A.19(3) to hold employer's application for rehearing extended employee's deadline to file petition for judicial review). But, neither *Fee* nor *Cooper* involved "dueling applications for rehearing in an agency proceeding." Thus, *Cooper* did not implicate the first sentence of section 17A.19(3). We must now determine whether this procedural difference from *Cooper* changes the outcome for Christiansen. This is a question of statutory interpretation.

"The goal of statutory construction is to determine legislative intent." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 586, 590 (Iowa 2004). "We determine legislative intent from the words chosen by the legislature, not what it should or might have said." *Id.* "Absent a statutory definition or established meaning in the law, words in the

statute are given their ordinary and common meaning by considering the context within which they are used." *Id.* Read in isolation, the first sentence of section 17A.19(3) permitted and, indeed, required Christiansen to file his petition for judicial review in district court within thirty days of the denial of his application for rehearing. *See* Iowa Code § 17A.19(3) ("If a party files an application . . . for rehearing with the agency, the petition for judicial review must be filed within thirty days after that application has been denied or deemed denied."). Within this sentence, "that application" clearly refers to the one filed by Christiansen as the party whose application was denied. But, this sentence must be read together with the rest of section 17A.19. *See Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 193 (Iowa 2011) ("When construing a statute, we assess the statute as a whole, not just isolated words or phrases.").

Accordingly, we must read the first sentence together with the third sentence, which states: "If an application for rehearing is granted, the petition for review *must* be filed within thirty days *after* the issuance of the agency's final decision on rehearing." Iowa Code § 17A.19(3) (emphasis added). Section 17A.19(3) must also be read with the exhaustion and finality requirement in section 17A.19(1), which provides: "A person or party *who has exhausted all adequate administrative remedies* and who is aggrieved or adversely affected by any final agency action is entitled to judicial review . . . ." *Id.* § 17A.19(1) (emphasis added). Christiansen was given the opportunity to file a brief and reply brief on the prior discipline issue raised in the State's rehearing application. Arguably, he had not yet exhausted his administrative remedies until the Board issued its final decision on the State's application. And, "[i]f an application for rehearing is granted," the third

sentence of section 17A.19(3) requires the petition for judicial review to be filed "after" the "final decision" on rehearing. We believe the State's interpretation of the statute is reasonable. But, it creates a trap for the unwary by eviscerating the plain meaning of the first sentence, which requires "the petition for judicial review [to] be filed within thirty days after that application has been denied or deemed denied" without referring to a "final decision." Thus, a reasonable interpretation of the statute allowed Christiansen to file his district court petition within the thirty-day window after the Board denied his application. *See Fee*, 463 N.W.2d at 22 ("We cannot believe the legislature intended for such a trap as the agency envisions here."). We conclude section 17A.19(3) is ambiguous "because the plain language of the statute leaves room for more than one reasonable interpretation." *Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 316 (Iowa 2013). We, therefore, turn next to the applicable canons of construction.

One such rule is that the more specific provision controls over the general provision. *See Oyens Feed*, 808 N.W.2d at 194 (" 'To the extent "there is a conflict or ambiguity between specific and general statutes, the provisions of specific statutes control." ' " (quoting *Freedom Fin. Bank v. Estate of Boesen*, 805 N.W.2d 802, 815 (Iowa 2011))). This rule, as codified, requires us to attempt to harmonize the provisions. *See* Iowa Code § 4.7 ("If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both."). The first sentence of section 17A.19(3) speaks specifically to the deadline to appeal following the denial of the party's own application for rehearing, so this rule cuts in favor of Christiansen.

Another approach is to construe ambiguous language to effectuate the purpose behind the statute. " 'We seek a reasonable interpretation

which will best effectuate the purpose of the statute . . . .' " *State v. Walker*, 804 N.W.2d 284, 290 (Iowa 2011) (quoting *State v. Johnson,* 528 N.W.2d 638, 640 (Iowa 1995)). The exhaustion requirement in section 17A.19 "has several purposes, including honoring agency expertise, handling matters within an agency and not in the courts, and preserving precious judicial resources." *IES Utils., Inc. v. Iowa Dep't of Revenue & Fin.,* 545 N.W.2d 536, 538 (Iowa 1996). These purposes cut against Christiansen. One argument Christiansen makes for reversing the Board's decision is that the Board improperly relied on the prior discipline evidence. District court review should not be shooting at a moving target. The Board's work should be completed before the district court steps into the fray. Jurisdiction should lie in one forum or the other, not both simultaneously. This case presents a less-than-optimal scenario in which Christiansen appealed to the district court while the Board continued with proceedings adjudicating the use of prior discipline, one of the issues Christiansen asked the district court to review. It makes sense for the district court's review to begin only after the Board issues its final decision after rehearing. Otherwise, the court may begin reviewing a decision before the agency finalizes the wording.

Strict enforcement of the exhaustion requirement avoids uncertainty over which tribunal has jurisdiction. Ordinarily, the filing of a notice of appeal divests the trial court of jurisdiction, and the appellate court must grant a limited remand to restore jurisdiction in the trial court to rule on any remaining posttrial motions. *Wolf v. City of Ely*, 493 N.W.2d 846, 848 (Iowa 1992). Similarly, the filing of a proper petition for judicial review divests the agency of jurisdiction unless and until the district court remands the case. *See McCormick v. N. Star Foods, Inc.,* 533 N.W.2d 196, 199 (Iowa 1995) ("[T]he petition for judicial review

deprived the commissioner of jurisdiction to rule on those matters."). We should avoid an interpretation of section 17A.19(3) that creates practical problems when one party petitions for judicial review before the agency's final decision on another party's application for rehearing. *See Cooper,* 782 N.W.2d at 167 (noting concern that party could file petition for judicial review to deprive agency of jurisdiction and thereby avoid an adverse ruling on pending application for rehearing).

An additional canon of construction recognizes that "legislative intent is expressed by omission as well as by inclusion of statutory terms." *Freedom Fin.,* 805 N.W.2d at 812 (citing *State v. Beach,* 630 N.W.2d 598, 600 (Iowa 2001)). The legislature did not include the term "final decision" in the first sentence of section 17A.19(3). This suggests the legislature meant to allow a party to appeal from the denial of that party's application for rehearing, even if the order denying the application is not itself a final decision. But, this interpretation creates tension with the third sentence and with section 17A.19(1) requiring finality and exhaustion of remedies.

Another applicable canon of construction is the default preference for the longer period to seek relief when statutory language arguably provides different deadlines for the same act. *See Oliver v. Teleprompter Corp.,* 299 N.W.2d 683, 687 (Iowa 1980) ("We do not try to shorten periods of limitation by construction."); *Sprung v. Rasmussen,* 180 N.W.2d 430, 433–34 (Iowa 1970) (holding court faced "with two permissible interpretations of the same statute" should prefer and apply "the one giving the longer period to a litigant seeking relief"). Consistent with this approach, the aggrieved litigant should be allowed thirty days to appeal from the final decision on the *last* application for rehearing to be decided. *See Cooper,* 782 N.W.2d at 167 (interpreting Iowa Code

section 17A.19(3) to require party to wait until agency decides pending application for rehearing).

We resolve the tension in the statutory language and underlying policies by interpreting section 17A.19(3) to require the party to await the final agency decision on the last pending application for rehearing before filing a petition for judicial review, even if more than thirty days has transpired since the agency denied that party's application for rehearing. This enforces the finality and exhaustion requirements of section 17A.19(1) while allowing the aggrieved party to proceed in district court after the agency completes its work. Under our holding today, Christiansen's petition for judicial review filed January 13, 2010, was premature, and jurisdiction remained with the Board to proceed with its adjudication of the State's application for rehearing and issue its final decision on March 3.

We next must decide whether Christiansen perfected his appeal to the district court. Although he jumped the gun with his January 13 petition, his case remained on file in district court. His April 9 filing alerted the district court to the final agency decision and reiterated his intent to proceed with his district court appeal. On April 16, he filed an "Amended Petition for Judicial Review" that specifically expanded his appeal to include the March 3 final decision. The district court's July 27 ruling allowed that amendment. We "normally strive to resolve disputes on their merits." *MC Holdings, L.L.C. v. Davis Cnty. Bd. of Review*, 830 N.W.2d 325, 328 (Iowa 2013). Based on the unique facts of this case, and the absence of prejudice to the State, the district court had discretion to allow Christiansen's amended filing to relate back to the deadline to appeal the agency's final decision. *See* Iowa R. Civ. P. 1.402(5) (relation-back rule); *M-Z Enters., Inc. v. Hawkeye-Sec. Ins. Co.,*

318 N.W.2d 408, 411 (Iowa 1982). Accordingly, on this basis, we affirm the district court's ruling that Christiansen's amended petition for judicial review was timely filed.

We hold the district court correctly ruled it had jurisdiction over Christiansen's petition. The court of appeals erred by concluding jurisdiction was lacking. We now turn to the merits.

### IV. The District Court's Decision on the Merits.

Our review of the district court's decision to affirm the Board on the merits is "controlled in large part by the deference we afford to decisions of administrative agencies." *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 844 (Iowa 2011). The district court rejected Christiansen's challenges and affirmed the Board's final decision as supported by substantial evidence.

Christiansen's overarching argument is that the Board's finding he committed student abuse is not supported by substantial evidence. He raises several subarguments, principally: (1) the Board relied on hearsay evidence in the DVD with videotaped ex parte interviews of the students, (2) the Board improperly considered prior discipline against him in crafting its sanction, (3) the Board's sanctions were excessive, and (4) the Board failed to apply the statutory safe harbor for a teacher's use of reasonable force found in Iowa Code section 280.21(2).[1]

---

[1]Christiansen raises two other claims on appeal that lack merit. First, he contends the bias of Oswald and Artist tainted the evidence presented at the hearing. Their alleged bias goes to their credibility. The bias claim was considered and rejected by the Board. We reject Christiansen's challenge to the evidence on the basis of bias because it is not the court's role to "reassess the weight to be accorded various items of evidence. Weight of evidence remains within the agency's exclusive domain." *Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993).

Second, Christiansen argues his conduct was consistent with policies of the West Branch Community School District. We agree with the district court that Christiansen failed to preserve this argument because "the policies were not introduced

We begin with the substantial-evidence challenge. The law is well-settled. It is the agency's duty "as the trier of fact to determine the credibility of the witnesses, weigh the evidence, and decide the facts in issue." *Arndt v. City of Le Claire*, 728 N.W.2d 389, 394–95 (Iowa 2007). "We are bound by the agency's findings so long as they are supported by substantial evidence." *Am. Eyecare*, 770 N.W.2d at 835.

> "*Substantial evidence*" means the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.

Iowa Code § 17A.19(10)(*f*)(1). "[E]vidence may be substantial even though we may have drawn a different conclusion as fact finder." *Pease*, 807 N.W.2d at 845. In a substantial-evidence challenge to agency fact-findings, the court must consider "any determinations of veracity by the presiding officer who personally observed the demeanor of the witnesses." Iowa Code § 17A.19(10)(*f*)(3).

The ALJ heard the live testimony of Christiansen and M.K. as they each recounted conflicting versions of their physical altercation. We acknowledge M.K.'s credibility was damaged by inconsistencies in his various statements and by testimony of other students at the criminal

_____

as evidence at the agency hearing." Although Iowa Code section 17A.19(7) allows "a court [to] hear and consider such evidence as it deems appropriate," Iowa Code § 17A.19(7), that "does not allow a reviewing court itself to consider evidence the parties failed to present before the agency when the matter is a 'contested case,'" *McMahon v. Iowa Dep't of Transp.*, 522 N.W.2d 51, 55 (Iowa 1994). *See also* Iowa Code § 17A.19(7) (prohibiting courts reviewing contested cases from "hear[ing] any further evidence with respect to those issues of fact whose determination was entrusted by Constitution or statute to the agency" and permitting the court to remand to the agency for the taking of additional evidence "[i]f it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the contested case proceeding before the agency").

trial who contradicted M.K.'s denial that he joined in the water fight or "gave the finger" to Christiansen. And, we note that several students who supported M.K.'s version when interviewed the following Monday by Oswald testified months later they did not see the physical contact. But, M.K. consistently maintained that Christiansen grabbed his right arm and propelled him down the aisle. The bruising on his upper right arm observed and photographed by Officer Isbell that evening corroborates M.K.'s version. So, too, does the trial testimony of several students. And, Christiansen's own account, although consistent in every retelling, sounds contrived. He admits to physically contacting M.K. with his hand in a manner he agrees probably appeared to onlookers like he pushed M.K. down the aisle. The ALJ who heard his testimony firsthand, and observed his demeanor and voice inflection, along with M.K.'s, was in the best position to assess credibility. The ALJ specifically found Christiansen's version of events was not credible. That finding, and the finding of student abuse, was adopted by the Board and is supported by substantial evidence.

Christiansen's counsel stipulated, without objection, to the admission into evidence of the DVD. The district court correctly ruled Christiansen thereby waived any hearsay objection. The Board's decision is not so heavily reliant on hearsay as to bring this case within the principles set forth in *Schmitz v. Iowa Department of Human Services.* 461 N.W.2d 603, 607–08 (Iowa Ct. App. 1990) (setting forth criteria to apply in substantial-evidence review of agency record composed solely of hearsay evidence).

Nor do we conclude the Board erred in considering Christiansen's prior discipline to determine the appropriate sanction. The prior bus incident occurred less than eighteen months earlier and involved

Christiansen grabbing the arm of a student and holding him on the floor. Christiansen treated the student involved in the prior incident in a sufficiently similar manner to the way he treated M.K. to make it a relevant consideration for the Board when evaluating the appropriate sanction. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 62 (Iowa 2009) ("[I]n determining the appropriate sanction, prior discipline is an aggravating factor to be considered."); *see also Halter v. Iowa Bd. of Educ. Exam'rs*, No. 04–0427, 2005 WL 974713, at *6 (Iowa Ct. App. Apr. 28, 2005) ("The Board's discretion to impose sanctions is extremely broad, and Iowa Code chapter 272 (2001) must be liberally construed to carry out the Board's purposes . . . one [of which] is protecting the health and safety of the children entrusted to the care and supervision of the licensee."); *Burns v. Bd. of Nursing*, 528 N.W.2d 602, 604 (Iowa 1995) ("A professional licensing board's authority to impose sanctions against those it licenses is extremely broad."); *Bd. of Dental Exam'rs v. Hufford*, 461 N.W.2d 194, 202 (Iowa 1990). Christiansen cites no persuasive authority to the contrary.

Christiansen also contends that the Board's sanction was excessive, given his teaching record and the lack of a connection between the incident and his teaching performance, and when compared to sanctions issued in other teacher-discipline cases. We affirm the sanctions in light of the broad discretion afforded to the Board. "When a 'licensing board is made up of members of the profession they are licensing, the court should not second guess the board's decision' as to the appropriate sanction." *Houck*, 752 N.W.2d at 21 (quoting *Burns*, 528 N.W.2d at 605); *see also Burns*, 528 N.W.2d at 605 (citing cases noting that courts generally uphold agency sanctions "unless they are 'against the manifest weight of the evidence'" or "' shockingly unfair'" (quoting

*Massa v. Dep't of Registration & Educ.*, 507 N.E.2d 814, 819 (Ill. 1987) (first quote); *Ahsaf v. Nyquist*, 332 N.E.2d 880, 881 (N.Y. 1975) (second quote)).

On further review, Christiansen primarily relies on Iowa Code section 280.21(2), which provides:

> 2. A school employee who, in the reasonable course of the employee's employment responsibilities, comes into physical contact with a student shall be granted immunity from any civil or criminal liability which might otherwise be incurred or imposed as a result of such physical contact, if the physical contact is reasonable under the circumstances and involves the following:
>
> *a.* Encouraging, supporting, or disciplining the student.
>
> *b.* Protecting the employee, the student, or other students.
>
> *c.* Obtaining possession of a weapon or other dangerous object within a student's control.
>
> *d.* Protecting employee, student, or school property.
>
> *e. Quelling a disturbance or preventing an act threatening physical harm to any person.*
>
> *f. Removing a disruptive student from class or any area of the school premises, or from school-sponsored activities off school premises.*
>
> *g.* Preventing a student from self-infliction of harm.
>
> *h.* Self-defense.
>
> *i.* Any other legitimate educational activity.

Iowa Code § 280.21(2) (emphasis added); *see also* Iowa Admin. Code r. 281—102.4(1). We have not previously interpreted or applied section 280.21(2). The statute by its terms "provides a safe-harbor to shield teachers from liability." *D.L. v. Waukee Cmty. Sch. Dist.*, 578 F. Supp. 2d 1178, 1191 (S.D. Iowa 2008).

Christiansen relies on sections 280.21(2)(*e*) and (*f*) in support of his safe-harbor argument. The district court affirmed the Board's rejection of Christiansen's safe-harbor challenge, stating:

There is substantial evidence in the record to support a finding that [the Board] did not misapply these two provisions to [Christiansen]'s case. The substantial evidence is found in the form of [Christiansen]'s testimony that he did not have to use reasonable force and/or contact on M.K.; rather, [Christiansen] testified at least once that he removed M.K. from the bus because M.K. was being disrespectful.

We agree that the Board reasonably could find neither subsection applied to his conduct. The water fight was over and M.K. had started to leave the bus when Christiansen made physical contact. The evidence supports a finding that there was no longer a disturbance to quell or "threat[] of physical harm to any person" within the meaning of section 280.21(2)(*e*). And, by Christiansen's own admission, he did not need to use force of any kind to remove M.K., whether he was "disruptive" or not. Thus, in light of the evidence, the Board could have reasonably found that section 280.21(2)(*f*) did not apply. No other subsection warrants reversal on this record.

For these reasons, we affirm the district court's ruling upholding the Board's final decision.

### V. Conclusion.

For the reasons set forth above, we hold the district court had jurisdiction over Christiansen's petition for judicial review and correctly affirmed the Board's final decision. We, therefore, vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**