# IN THE COURT OF APPEALS OF IOWA

No. 20-1581
Filed August 31, 2022


**LEROY YATES, JR.,**
    Plaintiff-Appellant,

**vs.**

**IOWA BOARD OF MEDICINE,**
    Defendant-Appellee.
_____


Appeal from the Iowa District Court for Polk County, Jeanie K. Vaudt, Judge.


A cosmetic surgeon challenges a judicial review order affirming Iowa Board of Medicine findings of professional incompetency, practice harmful to the public, unethical and unprofessional conduct, inappropriate prescribing, and improper record management. **AFFIRMED.**


Benjamin D. Rust II of The Law Offices of Benjamin D. Rust II, L.L.C., Orlando, Florida, for appellant.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.


Considered by Tabor, P.J., Badding, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**TABOR, Presiding Judge.**

LeRoy Yates, an obstetrician-gynecologist by training and most recently a cosmetic surgeon by practice, appeals a judicial review order upholding Iowa Board of Medicine (the Board) sanctions. Dr. Yates argues the district court erred in finding substantial evidence to support the Board's findings. He also alleges prosecutorial misconduct, conflicts of interest, and a due process violation. Because the Board's decision is supported by substantial evidence, we affirm. We do not reach the merits of his other objections because he failed to preserve error.

## I. Facts and Prior Proceedings

Dr. Yates graduated from medical school in 1986 and completed a residency in obstetrics and gynecology in 1990. He practiced in that field for over two decades. He also took up cosmetic surgery, launching his own clinic in 2012. At the Diamond Medical Spa and Vein Clinic in Davenport, Dr. Yates specialized in liposuction—doing hundreds of procedures between 2012 and 2017. Among those procedures, Dr. Yates performed fifty autologous fat transfer breast augmentations and more than two dozen "Brazilian butt lifts."[1]

Three years after Dr. Yates opened his clinic, the Board started receiving complaints about his practice. Three plastic surgeons from the Quad Cities and one former patient raised issues of surgical incompetency, poor patient care, and poor record keeping.[2]

---

[1] One of Dr. Yates's patients described this procedure: "He did liposuction and then he injected the fat he removed" back into the buttocks "to plump certain areas up."
[2] Dr. Benjamin Van Raalte also alleged that Dr. Yates engaged in false advertising, a count rejected by the Board. Dr. Yates had a contentious history with Dr. Van Raalte, who performed liposuction on Yates's wife, M.Y., in 1995. M.Y. was dissatisfied with the results and went to her husband for further liposuction

In response to those complaints, the Board conducted a peer review of Dr. Yates's patients. That review closed in July 2016 with a statement of charges, including professional incompetency; practice harmful or detrimental to the public; unethical or unprofessional conduct; inappropriate prescribing; fraud in representations about skill or ability; knowingly making misleading, deceptive, untrue, or fraudulent representations in the practice of medicine and surgery; use of untruthful or improbable statements in advertisements; and improper management of medical records.

As the district court observed, after the Board issued its charges, this matter "took a winding path." It was continued from September 2016 to February 2017 at Dr. Yates's request. Then the administrative law judge (ALJ) continued the hearing again so that Dr. Yates could obtain a neuropsychological exam and a clinical competency evaluation by the Center for Personalized Education for Physicians (CPEP). After receiving those assessments, the Board amended its charges in October 2017. It also issued an emergency adjudicative order concluding that there was a "serious immediate threat to patient health" if Dr. Yates continued to practice before final resolution of the pending charges. On Dr. Yates's motion, in February 2018 the Board amended that order to remove allegations that he suffered from a medical condition that impaired his ability to practice medicine. Still, the amended order prohibited him from engaging in cosmetic surgery.

---

and a fat transfer breast augmentation a year later. The Board considered Dr. Yates's treatment of his own wife in its factual findings and tied that finding to the count for inappropriate prescribing of controlled substances.

Following several more continuances and a second peer review to evaluate another patient's case, the Board amended its charges again in December 2018. The Board held a hearing in June 2019 and issued its findings in December 2019. The Board found that Dr. Yates deviated from the accepted standard of practice in all eleven patient cases that it investigated.[3] The decision cited Dr. Yates for five violations: professional incompetency, practice harmful or detrimental to the public, unethical or unprofessional conduct, inappropriate prescribing, and improper management of medical records. The Board ordered Dr. Yates to pay a civil penalty of $5000. It also prohibited him from practicing cosmetic surgery until he completed a Board-approved training to remedy deficiencies in his knowledge and skills as outlined in his CPEP evaluation. Finally, the Board imposed a five-year term of probation for Dr. Yates's return to the practice of cosmetic surgery.

Dr. Yates sought judicial review of the Board's decision. The district court rejected his challenges. He now appeals that judicial review order.

## II. Scope and Standards of Review

We review contested case proceedings before licensing boards for correction of legal error. *Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 186 (Iowa 2013). Determining witness credibility and weighing the evidence are tasks for the agency. *Id.* By contrast, our job is to be sure that the agency's findings are supported by substantial evidence. *Id.* at 192. If they are, we are bound by them. *Id.* In other words, we do not reweigh the evidence. *Burns v. Bd. of Nursing*, 495 N.W.2d 698, 699 (Iowa 1993). When interpreting administrative

---

[3] We will discuss his treatment of several of individual patients as we analyze Dr. Yates's substantial-evidence argument.

rules, we apply the principles governing statutory construction. *Motor Club of Iowa v. Dep't of Transp.*, 251 N.W.2d 510, 518 (Iowa 1977). We grant the Board "substantial deference when it interprets its own regulations," so long as its interpretation does not violate the rule's "plain language and clear meaning." *See Des Moines Area Reg'l Transit Auth. v. Young*, 867 N.W.2d 839, 842 (Iowa 2015) (citation omitted).

As for the judicial review decision, we apply principles from Iowa Code chapter 17A (2016) to decide whether we reach the same conclusion as the district court. *Am. Eyecare v. Dep't of Hum. Servs.*, 770 N.W.2d 832, 835 (Iowa 2009).

### III. Violations of Iowa Rules of Appellate Procedure

Before addressing Dr. Yates's appeal issues, we pause to discuss defects in his briefing. "The Iowa Rules of Appellate Procedure govern the form and manner for briefs filed in the supreme court." *Estate of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct. App. 1997). The appellant's brief filed for Dr. Yates breaches the rules of appellate procedure in many ways, technical and substantive.[4] For instance, the table of authorities does not refer to the pages of the brief where the cases and code sections are cited. Iowa R. App. P. 6.903(2)(b). Also, the statement of issues presented for review does not correspond to the issues presented in the argument section and does not list authorities referred to under each issue. Iowa R. App. P. 6.903(2)(c). And neither the statement of the case nor the statement of the facts refers to the record or the appendix as required by rule 6.904(4). Iowa R. App. P. 6.903(2)(e), (f). Those omissions make it difficult

---

[4] Before transferring this appeal to us, our supreme court granted a motion from Florida lawyer Benjamin D. Rust II to appear pro hac vice on behalf of Dr. Yates.

to tell if the assertions in the brief are supported by the record. When it comes to the argument section, Dr. Yates's brief fails to include a statement addressing how each issue was preserved for appellate review. Iowa R. App. P. 6.903(2)(g)(1). It is also missing statements addressing the scope and standard of review. Iowa R. App. P. 6.903(2)(g)(2). What's more, the argument section cites few legal authorities for its contentions. Iowa R. App. P. 6.903(2)(g)(3).

We may opt not to consider a party's position when the brief flouts our appellate rules. *DeTar*, 572 N.W.2d at 181; *see also Inghram v. Dairyland Mut. Ins. Co.,* 215 N.W.2d 239, 239 (Iowa 1974) (noting wholesale failure to comply with the rules can lead to summary disposition of an appeal). Sometimes, as a matter of grace, we will decide issues even when the brief falls short. *See DeTar*, 572 N.W.2d at 181. We grant Dr. Yates that grace only if we can sort through his claims "without assuming a partisan role and undertaking [his] research and advocacy." *Id.*

## IV. Analysis

### A. Was the Board's decision supported by substantial evidence?

Dr. Yates asks us to reverse the district court's order because he insists the Board's decision was unsupported by substantial evidence.[5] The Iowa Administrative Procedure Act defines "substantial evidence" as "the quantity and

---

[5] The Board asserts that Dr. Yates failed to state how he preserved error on this and every other issue raised in his brief. But it acknowledges that the substantial-evidence question is properly before us. So we choose to reach the merits on that question. That said, Dr. Yates appears to challenge only the first four grounds cited by the Board. Because he fails to mention the fifth and final ground, failure to properly maintain medical records, any complaint about that basis for the Board's action is waived. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance." Iowa Code § 17A.19(10)(f)(1). In reviewing the doctor's challenge, we do not speculate whether the record might support a different finding. *See Eaves v. Bd. of Med. Exam'rs*, 467 N.W.2d 234, 237 (Iowa 1991). Instead, we limit our analysis to whether substantial evidence supports the Board's actual finding. *Id.*

### 1. Professional Incompetency and Practice Harmful to the Public

We will address the Board's first two grounds for sanctioning Dr. Yates in a single division. First, the Board cited Dr. Yates for professional incompetency. *See* Iowa Code §§ 147.55(2), 148.6, 272C.10(2). The Board's administrative rules define professional incompetency as, among other things:

> *c.* A substantial lack of knowledge or ability to discharge professional obligations within the scope of the physician's or surgeon's practice;
> *d.* A substantial deviation by the physician from the standards of learning or skill ordinarily possessed and applied by other physicians or surgeons in the state of Iowa acting in the same or similar circumstances;
> *e.* A failure by a physician or surgeon to exercise in a substantial respect that degree of care which is ordinarily exercised by the average physician or surgeon in the state of Iowa acting in the same or similar circumstances;
> *f.* A willful or repeated departure from or the failure to conform to the minimal standard of acceptable and prevailing practice of medicine and surgery or osteopathic medicine and surgery in the state of Iowa . . . .

Iowa Admin. Code r. 653-23.1(2)(*c*)-(*f*).

Second, the Board cited Dr. Yates for practice harmful or detrimental to the public. *See* Iowa Code §§ 147.55(3), 272C.10(3). The rules define that violation

as including, but not limited to, "the failure of a physician to possess and exercise that degree of skill, learning and care expected of a reasonable, prudent physician acting in the same or similar circumstances in this state, or when a physician is unable to practice medicine with reasonable skill and safety as a result of a mental or physical impairment or chemical abuse." Iowa Admin. Code r. 653-23.1(3).

In chronicling these violations, the Board cited Dr. Yates for "poor patient selection." In other words, he agreed to perform cosmetic procedures on patients who would not be considered good candidates either because their body mass index was too high or too low, or because they were immunocompromised. A glaring case was patient P.W., who was in remission after a lumpectomy and radiation treatment for breast cancer. She was also taking an immunosuppressant for psoriatic arthritis. Still, Dr. Yates performed an autologous liposuction with a fat transfer breast augmentation. Afterward, P.W. suffered a post-operative infection requiring a trip to the emergency room and a consultation with an infectious disease specialist.

Another instance of failing to exercise a reasonable degree of care was Dr. Yate's treatment of patient A.L., who wanted liposuction with a fat transfer to her buttocks. He first met with A.L. at a Las Vegas hotel, where he explained the procedure. She later flew alone from Las Vegas to Davenport to undergo the procedure, which started at 10:15 a.m. and continued into the evening. As A.L. slipped in and out of consciousness she recalled Yates's medical assistant leaving for the day and his wife, M.Y., who was an emergency room doctor, arriving to assist. M.Y. instructed A.L. to flip over on her stomach before Dr. Yates injected the fat into her buttocks. A.L. reported "an immense amount of pain" at that point

in the surgery. Her blood pressure also dropped. And she vomited. After completing the procedure, Yates told A.L. that she would have to spend the night at their home. A.L. recalled that M.Y. had laid a plastic runner up the stairs to a bedroom "so nothing would leak on the floor, on the carpet." The next morning, although A.L. was still "woozy," the Yates urged her to shower and then put her on a plane back to Las Vegas. The peer-review physicians concluded that "it was highly unusual for a physician to bring a patient to his home following a surgical procedure." Instead, the standard of care dictated that A.L. be taken to a hospital or other facility designed for patient monitoring.

Patients P.W. and A.L. are just two examples in the Board's robust fact findings that undergird these first two grounds for sanctioning Dr. Yates. The Board's order discusses at least seven other patients revealing incompetence in Dr. Yates's practice. On this record, we are convinced that substantial evidence supports the Board's findings.

In his appellant's brief, Dr. Yates nibbles around the edges of the Board's findings—leaving the bulk of the evidence untouched.[6] *See generally Lyons v. Iowa Bd. of Med.*, No. 08-1538, 2009 WL 1677149, at \*2 (Iowa Ct. App. June 17,

---

[6] In one section of his brief, Dr. Yates contends that the district court "completely disregarded" two unpublished court of appeals decisions: *Poole v. Board of Medical Examiners*, No. 99-0074, 2000 WL 193612 (Iowa Ct. App. Jan. 26, 2000), and *Strickler v. Iowa Board of Medical Examiners*, No. 05-1721, 2006 WL 2265542 (Iowa Ct. App. Aug. 9, 2006). Because those cases are not binding precedent, the district court did not need to cite them. *See* Iowa R. App. P. 6.904(2)(c); *State v. Lindsey*, 881 N.W.2d 411, 415 n.1 (Iowa 2016) (noting "unpublished decisions of the court of appeals do not constitute binding authority" but may help "define the issues" before the district court). On their merits, we find *Strickler* more similar to this case than *Poole*. *Strickler*, 2006 WL 2265542, at\* 3 (holding Board properly disciplined doctor for repeated acts of professional incompetency).

2009) ("While pieces of this evidence, taken out of context, might support different findings, those pieces do not require reversal under the pertinent judicial review standard."). For instance, Dr. Yates argues that the Board had no basis to conclude that he suffered from any mental disorder or cognitive impairment that interfered with his ability to safely practice medicine. This argument appears to focus on the emergency adjudicative order. And as the Board responds, the CPEP evaluation identified several concerns that suggested that Dr. Yates's clinical judgment was inadequate and he did not understand his own limitations. Yet in the end, the Board's discussion of Dr. Yates's cognitive abilities was not essential to its ultimate finding that Dr. Yates's cosmetic surgery practice was harmful or detrimental to the public under the first alternative of rule 653-23.1(3) ("the failure of a physician to possess and exercise that degree of skill, learning and care expected of a reasonable, prudent physician acting in the same or similar circumstances in this state"). We leave that finding undisturbed.

Next Dr. Yates complains that the Board's peer reviewers, Dr. Mark Mulkey and Dr. Thomas Lawrence, evaluated him under standards for plastic surgery rather than cosmetic surgery. He contends that he should not be held to the standard of board-certified plastic surgeons because he "has never claimed to be one." He emphasizes that, unlike plastic surgeons, cosmetic surgeons have neither residency training nor board certification. With no specificity, he invites us to "see the record that outlines all of the courses and seminars" that he has attended to become competent in cosmetic surgery. On top of the training issue, Dr. Yates insists Dr. Mulkey and Dr. Lawrence "have significant conflicts of

interests" that should have precluded their participation in the administrative process.

It is hard to assess Dr. Yates's claims about the peer review process. He does not point us to where in the record that he objected to the Board's reliance on the opinions of Dr. Mulkey and Dr. Lawrence. Rather, he casts vague aspersions about their qualifications and objectivity. And he tucks his complaints about the peer reviewers under his substantial-evidence argument. Under that overarching challenge to the board's conclusions, we find more than adequate support for the Board's findings in the hearing record. Both Dr. Lawrence and Dr. Mulkey testified that they had done the kind of cosmetic procedures at issue. Given their practice experience, the Board properly relied on their peer review report. Their report did not focus on Dr. Yates's lack of training in plastic surgery, but on his failure to meet the standard of care for certain procedures. The Board could accept the peer reviewers' opinions, even against countervailing views from Dr. Yates and his witnesses. "Where evidence is in conflict or reasonable minds might disagree about the conclusions to be drawn, the court is bound to accept the agency's findings." *Eaves*, 467 N.W.2d at 237.

In a final critique of the agency's action, Dr. Yates claims none of his patients suffered serious complications. He contends "poor patient selection" should not be a basis to impose penalties because professional judgment can "vary widely among practitioners." And in response to the unorthodox step of taking patient A.L. to his residence, he ventures: "[W]hile it is not a common practice to bring a patient back to your home for observation, it is not unheard of

nor a violation per se. If anything, this was an attempt by [Dr. Yates] to ensure the well-being of his patient."

We find these points unconvincing. "The Board is not limited to disciplining licensees for conduct that is actually detrimental to the public but is allowed to discipline licensees for conduct potentially detrimental to the public." *Rabi v. Iowa Bd. of Med.*, No. 16-1730, 2017 WL 4315056, at *2 (Iowa Ct. App. Sept. 27, 2017). The evidence before the Board detailing eleven problematic cases backed its findings that Dr. Yates engaged in practices that threatened the safety of his patients and endangered the public.

### 2. Unethical or Unprofessional Conduct

As its third count, the Board sanctioned Dr. Yates for unethical and unprofessional conduct under Iowa Code sections 147.55(3), 148.6(2)(f) and 272C.10(3) and Iowa Administrative Code rule 653-23.1(4). It found that his treatment of patient A.L. fell below a minimal standard of acceptable and prevailing practice. The Board noted that Dr. Yates performed her "surgical procedure without appropriate cardiac monitoring, during which she suffered a period of hypotension." The Board also criticized the decisions that Dr. Yates made after A.L.'s procedure:

> [Dr. Yates] acted unethically and unprofessionally when he failed to transport A.L. to the local emergency room for appropriate treatment and monitoring for her condition. More importantly, the Board determined that [his] act of transporting A.L. to his personal home instead of the hospital for further observation to be an extreme departure from the minimal standard of acceptable and prevailing practice of medicine and surgery.

Dr. Yates insists nothing in the record shows that he "acted with any malintent towards A.L." But the Board did not have to find malintent. Just a willful departure

from acceptable medical practice. *See* Iowa Code § 148.6(2)(f). We find substantial evidence to support the Board's finding.

### 3. Inappropriate Prescribing

Under Iowa Code section 148.6(2)(h), a doctor may be disciplined for willfully violating a rule adopted by the Board. Under Iowa Administrative Code rule 653-23.1(7)(b), doctors may not prescribe or dispense controlled substances to members of their immediate family, including spouses, if the prescription is not for "an acute condition or on an emergency basis." The Board decided that Dr. Yates violated that rule by dispensing alprazolam, morphine, and midazolam to his wife, M.Y., while performing a cosmetic procedure.

To counter that charge, Dr. Yates contends that he dispensed controlled substances to his wife during a "one-time procedure" which "perfectly matches" the rule's exception for an "acute condition." He cites a dictionary definition of "acute" as "lasting a short time" or providing "short-term medical care." The Board disputes the doctor's interpretation, contending "an acute condition" cannot be created by "an elective cosmetic surgery in non-emergent circumstances." The Board suggests a more technical definition of acute as being "medically unstable." *Cf.* Iowa Admin. Code r. 191-39.5(5) (discussing long-term care insurance).

In settling their interpretative debate, we start from the paradigm that an agency is entitled to substantial deference when interpreting its own rules.[7] *See TLC Home Health Care, L.L.C. v. Iowa Dep't of Hum. Servs.*, 638 N.W.2d 708, 711

---

[7] The legislature authorized the Board to "adopt all necessary and proper rules to administer and interpret" chapter 148 governing the practice of medicine in Iowa. Iowa Code § 147.76.

(Iowa 2002). That deference is especially apt for "regulations entrusted to agencies responsible for licensing professionals." *Al-Khattat v. Eng'g & Land Surv. Examining Bd.*, 644 N.W.2d 18, 23 (Iowa 2002).

Having reviewed rule 653-23.1(7)(b) and its prohibition on dispensing controlled substances to immediate family members except in emergencies or for acute conditions, we cannot find that the Board's interpretation was "irrational, illogical, or wholly unjustifiable." *See* Iowa Code § 17A.19(10)(l). The Board was justified in determining that dispensing controlled substances to a spouse as part of an elective cosmetic procedure did not fall into the exception for "an acute condition" under the rule. It makes sense for medical professionals to view "an acute condition" as akin to "an emergency basis," the other exception listed in rule 23.1(7)(b)(1). As they say, "words of a feather flock together." *State v. Ross*, 941 N.W.2d 341, 348 (Iowa 2020) (citation omitted) (discussing associated-words interpretive canon). Under the Board's logic, to be an exception to the general prohibition against prescribing controlled substances to a close relative, the patient's condition must be unexpected and reaching a crisis level.[8] That logic tracks the American Medical Association Code of Ethics, which states that physicians generally should not treat members of their immediate family and should not write prescriptions for controlled substances for family members except in emergencies. *See Am. Med. Ass'n J. of Ethics*, Opinion 8.19 (May 2012). That ethics code serves as a guiding principle for the Board. Iowa Admin. Code r. 653-

---

[8] A leading medical dictionary defines "acute" as "having rapid onset, severe symptoms, and a short course, not chronic." *Taber's Cyclopedic Medical Dictionary* (18th ed.1997) at 34.

13.20.  We discern no flaw in the Board's interpretation of the term "acute" in the rule, leading to its finding of inappropriate prescribing.

## B.  Unpreserved Claims

In his remaining brief points, Dr. Yates argues that the district court "failed to evaluate" three claims: (1) he was deprived of a fair trial because of prosecutorial misconduct; (2) Board members and the Board's counsel had conflicts of interest and were biased against him; and (3) he was denied due process when the Board refused to strike testimony from Dr. Arik Eckhart from the record.

None of these claims are properly preserved for appeal.  First on the claim of prosecutorial misconduct, Dr. Yates contends that an assistant attorney general representing the Board committed "theft" by leaving a deposition without returning binders of documents provided to the court reporter and parties.  The Board's attorney later complied with the ALJ's directive to return the binders.  The district court decided this issue was waived because Dr. Yates raised it for the first time on judicial review.  The court also noted that Dr. Yates raised no ground under Iowa Code section 17A.19 for the court to consider reversible error on this claim of misconduct.  We agree with the district court on both waiver grounds.  Raising an issue for the first time in a petition for judicial review does not preserve error. *Chauffeurs, Teamsters & Helpers, Loc. Union No. 238 v. Iowa C.R. Comm'n*, 394 N.W.2d 375, 382 (Iowa 1986).  In the appeal to our court, Dr. Yates cites three criminal cases on prosecutorial misconduct.  Those cases do not help his cause. He does not state how he preserved error on his claim.  We thus decline to address the merits.

Second, Dr. Yates argues that members of the Board and its counsel had conflicts of interest and prejudices against him. The district court held that Dr. Yates's unsuccessful objection to the participation of one Board member at the start of the agency hearing did not preserve error for the bias and conflicts of interest alleged in judicial review. The court relied on precedent stating, "any challenge grounded in agency bias must be presented by written affidavit; an oral objection like the one made here is statutorily insufficient." *See Kholeif v. Bd. of Med. Exam'rs*, 497 N.W.2d 804, 807 (Iowa 1993) (analyzing what is now Iowa Code section 17A.17(7)); *Collison v. Iowa Bd. of Med.*, No. 13-0477, 2014WL 69535, at *5 (Iowa Ct. App. Jan. 9, 2014) (holding failure to file affidavit with Board precludes review of agency bias on appeal). In his appeal to our court, Dr. Yates does not try to distinguish *Kholeif* and *Collison*. He also does not argue how an objection to one Board member preserved his other appellate claims of bias. In fact, he includes no statement on error preservation. We thus decline to reach the merits.

Third, Dr. Yates argues that he was denied due process because the Board refused to exclude the testimony of complaining physician Eckhart after he failed to appear for his deposition. The district court decided that the due process challenge was waived because it was raised for the first time on judicial review. We agree with that decision. Even constitutional issues must be raised at the Board level to be considered on appeal. *Chicago & N.W. Transp. Co. v. Iowa Transp. Reg. Bd.*, 322 N.W.2d 273, 276 (Iowa 1982). What's more, Dr. Yates makes no preservation argument in his appellate brief. So we do not address the merits of his due process claim.

**V.      Conclusion**

To recap, we find substantial evidence to support the Board's sanctions on all contested grounds.  In doing so, we conclude the Board properly interpreted the term "acute" in its administrative rule.  We decline to reach the merits of Dr. Yates's ancillary issues because they were not preserved for our review.

**AFFIRMED.**