**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 20-1435

NATIONAL VETERANS LEGAL SERVICES PROGRAM,

Plaintiff - Appellant,

v.

UNITED STATES DEPARTMENT OF DEFENSE; LLOYD J. AUSTIN, III, in his official capacity as Secretary of Defense; JOHN E. WHITLEY, in his official capacity as Acting Secretary of the Army; THOMAS W. HARKER, in his official capacity as Acting Secretary of the Navy; JOHN P. ROTH, in his official capacity as Acting Secretary of the Air Force; ALEJANDRO N. MAYORKAS, in his official capacity as Secretary of Homeland Security,

Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Rossie David Alston, Jr., District Judge. (1:20-cv-00003-RDA-TCB)

Argued: December 9, 2020                          Decided: March 11, 2021

Before WILKINSON, NIEMEYER, and DIAZ, Circuit Judges.

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Wilkinson and Judge Diaz joined.

**ARGUED:** Matthew Robert McGuire, HUNTON ANDREWS KURTH LLP, Richmond, Virginia, for Appellant. Lauren Anne Wetzler, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees. **ON BRIEF:** George P. Sibley, III, J. Pierce Lamberson, Sarah C. Ingles, HUNTON ANDREWS KURTH LLP, Richmond,

Virginia, for Appellant. G. Zachary Terwilliger, United States Attorney, John E. Swords, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellees.

---

NIEMEYER, Circuit Judge:

Various statutory provisions and regulations require the U.S. Department of Defense ("DoD") to maintain a publicly accessible website containing all decisions rendered by its Discharge Review Boards and Boards for Correction of Military/Naval Records. Before being posted on the website, however, the decisions had to be redacted so as to exclude "personally identifiable information." 10 U.S.C. § 1552(a)(5). When alerted in April 2019 to the fact that some posted decisions contained personally identifiable information, the DoD temporarily removed all decisions from the website and, since then, has been redacting and restoring them to the site, but arguably at a slow pace. Indeed, some pre-2019 decisions have yet to be reposted.

National Veterans Legal Services Program ("NVLSP"), a nonprofit organization that assists veterans to correct military records in order to secure benefits, commenced this action against the DoD and the Secretaries of the military departments to require them to fulfill the statutory mandate of publishing all decisions and to do so promptly. It sought a judgment declaring that the removal of the decisions, the failure to repost them, and the failure to properly index them was the "unlawful withholding of an agency action" that could be remedied under the Administrative Procedure Act, and it sought injunctive relief requiring the defendants to "immediately restore" the decisions, to post new ones within 60 days, and to "maintain an index of decisions that allows the user to easily find relevant decisions."

Following a hearing on NVLSP's motion for a preliminary injunction and the defendants' motion to dismiss the action for lack of jurisdiction, the district court granted

the defendants' motion, ruling that NVLSP lacked Article III standing to bring the action and also that the DoD's conduct was not judicially reviewable under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704. Without jurisdiction, the court concluded, it had to "deny Plaintiff's Preliminary Injunction Motion."

We affirm. While we conclude that NVLSP has standing to bring this action, we nonetheless agree with the district court that it lacked subject matter jurisdiction. NVLSP challenges the defendants' ongoing actions in maintaining and managing the website, not any final agency action understood as a discrete agency determination of rights and obligations, as necessary to give a court subject matter jurisdiction under the APA.

I

Congress has created a system by which members of the armed forces can request the Secretary of a military department to correct their military records or to remove an injustice, and it has authorized each Secretary to act through boards within the military department to address the request and render a decision. The Discharge Review Boards ("DRB") were established to review less-than-honorable discharge classifications, and the Boards for Correction of Military/Naval Records ("BCMR") were established for when a DRB denies individual relief. Under current law, each final decision of a Board must be made available to the public by posting it on an Internet website, although each decision must be redacted to remove "all personally identifiable information." 10 U.S.C. § 1552(a)(5); *see also* 32 C.F.R. § 70.8(l).

4

Before 2004, decisions were published in paper form in a physical location known as a Board "Reading Room," and they had to be "indexed" to make them "usable" to the public. In 2004, however, the DoD abandoned the physical location and indexing in favor of the DoD Electronic Reading Room website, <http://boards.af.mil>, where all decisions since 1996 were posted and made searchable. DoD Directive 1332.41.4.3.5 (Mar. 8, 2004). And in 2016, Congress codified the use of the website:

> Each final decision of a board under this subsection shall be made available to the public in electronic form on a centralized Internet website. In any decision so made available to the public there shall be redacted all personally identifiable information.

10 U.S.C. § 1552(a)(5).

In April 2019, when a military department discovered that a decision published on the Electronic Reading Room website contained personally identifiable information, a randomized review of other decisions was conducted, and that review revealed additional decisions containing personally identifiable information. As a consequence, on April 26, 2019, the DoD removed all 245,000 decisions on the Electronic Reading Room website from public access and posted a notice that the "decisional documents normally published in the Department of Defense Reading Room have been temporarily removed to conduct a quality assurance review. We will update this webpage when we have a better estimate[] of when the decisional documents will again be available." The public could, however, request and receive copies of specific decisions while this review was being conducted. While a portion of the review was conducted by computer, that proved inadequate for some types of personally identifiable information, and thereafter decisions had to be reviewed

5

manually, a laborious and time-consuming task. When NVLSP commenced this action, no decisions had yet been reposted, but by a few weeks later, 25,472 had been reposted, and as of June 2020, 138,192 had been reposted.

NVLSP commenced this action in January 2020 to challenge the delay. It alleged that although the removal of decisions was purportedly temporary, the defendants, as of the commencement of the action, "ha[d] not republished the Boards' decisions, [and] they ha[d] not provided an estimate of when they will be republished." It asserted that "[t]his lack of information" undermined its ability to perform its mission. For relief, NVLSP requested a declaratory judgment that the DoD conduct "is unlawful withholding of an agency action," as well as a preliminary and a permanent injunction requiring the DoD to restore the decisions to the website "immediately" and to "maintain an index of decisions that allows users to easily find relevant decisions."

The DoD filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) on the grounds that NVLSP lacked standing to sue and that NVLSP's complaint did not challenge "agency action" made reviewable by the APA.

The district court granted the DoD's motion to dismiss and, as a consequence, denied NVLSP's motion for a preliminary injunction. It found that NVLSP had not suffered an "injury in fact" necessary to confer Article III standing and also that the DoD's management of its database was not final agency action and therefore was not judicially reviewable under the APA. The court observed that because the DoD had already restored some of the decisions to the website, it understood NVLSP to be claiming that the DoD was "not working fast enough," a claim that would require the court to adopt a

6

"supervising" role over the DoD's day-to-day operations. The court characterized NVLSP's challenge as an unreviewable "'broad programmatic attack' on the government's operations." (Quoting *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019)).

From the district court's judgment dated April 2, 2020, NVLSP filed this appeal.

II

As an initial matter, the district court concluded that NVLSP's complaint should be dismissed because the organization lacked Article III standing. The court reasoned that NVLSP failed to show "injury in fact" in failing to plead "any specific instance" in which it was "effectively unable to fulfill its mission because of the lack of information that it had." NVLSP, however, contends that the district court erred in failing to recognize its informational injury, citing *Dreher v. Experian Information Solutions, Inc.*, 856 F.3d 337, 345 (4th Cir. 2017) (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 24 (1998)).

In its complaint, NVLSP alleged that "its mission is to assist veterans in effectively applying to a DRB or BCMR to correct errors or injustices contained in their military records," and that it "accomplishes its mission in part by screening the merit of the cases of veterans who wish to apply to a DRB or BCMR" and "pairing veterans with potentially meritorious cases." It also alleged that it publishes a 2,200-page *Veterans Benefits Manual*, which relies heavily on the Boards' decisions. It claimed that "[a]ccess to Board decisions is essential for [its] daily operations . . . , because the effectiveness of [its] services depends

on understanding the reasoning behind the Boards' decisions." As it stated in the complaint:

> Without access to previous Board decisions, NVLSP cannot evaluate the potential success of appeals or develop strategies to assist veterans in filing their applications to the Boards. This lack of information prevents NVLSP from effectively carrying out its mission of advocating for veterans so that they may receive the benefits they deserve.

We conclude that the informational injury alleged by NVLSP is just the kind of injury found to have established standing in *Akins*. In *Akins*, the Court held that voters had standing to sue the Federal Election Commission to require it to disclose contributions made to an organization under its jurisdiction and distributions made by that organization to candidates for office. 524 U.S. at 13–14. It explained that the voters suffered an "injury in fact" consisting of "their inability to obtain information." *Id*. at 21. Accepting the voters' claims that the information would "help them . . . evaluate candidates for public office," the Court stated that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id*.; *see also Dreher*, 856 F.3d at 345.

So it is here, and therefore, we reverse the district court's ruling on standing.

## III

The district court also dismissed NVLSP's complaint for lack of subject matter jurisdiction, concluding that the challenged conduct was not "final agency action" that the APA makes judicially reviewable. 5 U.S.C. § 704. NVLSP contends, however, that the district court erred because the DoD, in removing and not reposting the Boards' decisions

8

promptly, "breached its discrete, circumscribed obligation to publish the Boards' decisions to a searchable internet website, denying [it] the relief afforded by 10 U.S.C. § 1552(a)(5)."

At the outset, we recognize that "the APA waives the federal government's sovereign immunity for a limited set of suits" and that "sovereign immunity is jurisdictional in nature." *City of New York*, 913 F.3d at 430 (cleaned up). Thus, a court may entertain suits against the federal government under the APA only within the scope of its waiver. And the APA defines that scope of waiver to permit judicial review of only "final agency action[s]." 5 U.S.C. § 704. The jurisdictional question presented, therefore, is whether the DoD's conduct amounted to "final agency action" within the meaning of § 704.

Final agency action "is a term of art that does not include all [agency] conduct such as, for example, constructing a building, operating a program, or performing a contract," but instead refers to an "agency's [final] *determination* of rights and obligations whether by rule, order, license, sanction, relief, or similar action." *Vill. of Bald Head Island v. U.S. Army Corps of Eng'rs*, 714 F.3d 186, 193 (4th Cir. 2013) (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). And each of the two components — agency action and finality of agency action — narrows the scope of judicial review.

When authorizing review of "agency action," the APA "does not provide judicial review for everything done by an administrative agency." *Hearst Radio v. FCC*, 167 F.2d 225, 227 (D.C. Cir. 1948). Rather, it defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or the denial thereof, or failure to act." 5 U.S.C. § 551(13). The Supreme Court has recognized that this

provision refers only to conduct that is "circumscribed" and "discrete." *Norton v. S. Utah Wilderness Alliance* ("*SUWA*"), 542 U.S. 55, 62 (2004). Thus,

> [w]hen challenging agency action — whether it be a particular action or a failure to act altogether — the plaintiff must . . . identify specific and discrete governmental conduct, rather than launch a 'broad programmatic attack' on the government's operations. This distinction between discrete acts, which are reviewable, and programmatic challenges, which are not, is vital to the APA's conception of the separation of powers. Courts are well-suited to reviewing specific agency actions, such as rulemakings, orders, or denials. [They] are woefully ill-suited, however, to adjudicate generalized grievances asking [them] to improve an agency's performance or operations.

*City of New York*, 913 F.3d at 431 (quoting *SUWA*, 542 U.S. at 64).

For instance, the Supreme Court has repeatedly held that various aspects of the Bureau of Land Management's stewardship of public lands were insufficiently circumscribed to constitute agency action under the APA, despite express statutory mandates for such stewardship. *SUWA*, 542 U.S. at 66–67 (rejecting a challenge to the Bureau's permission of off-road vehicles on certain wilderness lands despite the Bureau's general statutory obligation not to impair that wilderness); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (stating that plaintiffs "cannot seek *wholesale* improvement of [the Bureau's] program by court decree, rather than in the offices of the Department or the halls of Congress, where programmatic improvements are normally made"). Similarly, we dismissed a lawsuit against the DoD for its alleged failure to share promptly with the Attorney General information that is used to run background checks on purchasers of firearms. *See City of New York*, 913 F.3d at 432–33. There, the plaintiffs argued that the DoD had failed to fully satisfy a clear statutory obligation to share information. *Id*. at 429. But we noted that the DoD, far from denying its obligation to share information, was

"engaged in extensive efforts to increase its compliance." *Id*. at 433. We thus held that the plaintiff's claim seeking to improve the speed or quality of that performance did not challenge conduct subject to the APA's judicial review provisions, but instead would have forced a court "to engage in day-to-day oversight" of the DoD's compliance effort. *Id*. at 431.

As for the requirement of finality — i.e., the requirement of "*final* agency action" — the Supreme Court has stated that to be "final" the action must *first* "mark the consummation of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature. And *second*, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (emphasis added) (quoting *Bennett*, 520 U.S. at 177–78). Thus, in *Village of Bald Head Island*, we held that the plaintiff's challenge of the Corps of Engineers's failure to adequately protect and renourish beaches, which it had undertaken to do, was not a determination that could be considered final agency action. 714 F.3d at 194–95; *see also City of New York*, 913 F.3d at 431–32.

With this understanding of "agency action" and "*final* agency action," we readily conclude that NVLSP's challenge to the DoD's conduct in this case is not judicially reviewable.

The DoD created an Electronic Reading Room website, as it was required to do by statute, and for years it has managed that site. As part of that management, when the DoD learned in April 2019 that public decisions contained personally identifiable information

11

(which is prohibited by statute), it took down all of the Boards' decisions, constituting some 245,000 decisions, so that it could comply with the statutory mandate. *See* 10 U.S.C. § 1552(a)(5) (requiring redaction of decisions to remove "all personally identifiable information"); *see also* 32 C.F.R. § 70.8(l)(2) (providing that "[t]o prevent a clearly unwarranted invasion of personal privacy, identifying details of the applicant and other persons will be deleted from documents made available for public inspection"). And since 2019, the DoD has been redacting the decisions and reposting them. As of February 18, 2020, it had reposted 18,593 decisions; as of June 5, 2020, it had reposted 138,192 decisions; as of December 15, 2020, it had reposted 169,061 decisions; and as of March 1, 2021, it has, according to our review of the DoD website, reposted 188,761 decisions. Significantly, the DoD never determined that NVLSP or any other member of the public was not entitled access to the website. Nor did the DoD ever purport to permanently deny the public access. As the website stated, it simply removed the decisions from the website *temporarily* "to conduct a quality assurance review."

NVLSP's position appears to recognize this state of affairs. In its complaint, filed when no decisions had yet been reposted, NVLSP requested injunctive relief requiring the DoD to "immediately restore" all decisions, to post outstanding decisions "within 60 days," and thereafter, to "continue . . . publish[ing] all decisions of the Boards electronically within a reasonable time." In short, its challenge amounts to a complaint that the DoD was not adequately carrying out its duties of maintaining the Electronic Reading Room website for public access and timely posting decisions on that website.

12

Thus, NVLSP does no more in this case than challenge the adequacy of the DoD's "performance" of its statutory duty, not any DoD "determination" of rights and obligations, *Vill. of Bald Head Island*, 714 F.3d at 193–94; its challenge is a "programmatic attack" on DoD's "day-to-day agency management," *City of New York*, 913 F.3d at 431 (quoting *SUWA*, 542 U.S. at 64, 67). This is precisely the type of challenge over which courts have no jurisdiction. It does not focus on a DoD determination that is the "consummation of the [DoD's] decisionmaking process." *Bennett*, 520 U.S. at 178 (cleaned up); *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004). Rather, it broadly complains of DoD mismanagement. Thus, the district court correctly dismissed NVLSP's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

NVLSP argues that its complaint, filed before the DoD reposted any decisions, challenges only the discrete removal of the 245,000 decisions from the Electronic Reading Room website. It also notes that the DoD's motion to dismiss the complaint was a facial challenge, relying on only the allegations of the complaint. Thus, relying on *Wikimedia Foundation v. National Security Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (providing the standards for resolving facial and factual challenges to standing), it seeks to cabin our review to the conduct alleged in the complaint.

But this effort gains NVLSP little. For one thing, the DoD's determination to remove all decisions from the website on a temporary basis to conform with the statutory mandate to exclude personal information still was not a *determination* of rights and

13

obligations that would amount to final agency action. It was instead a decision in furtherance of ongoing website management.

More importantly, the parties presented much more information to the district court on which the court could rely to rule than the mere allegations of the complaint. Before the DoD filed its motion to dismiss, NVLSP filed a motion for a preliminary injunction supported by numerous affidavits and exhibits, which provided the court with a record of facts and arguments far beyond those alleged in the complaint. And when the DoD filed its Rule 12(b)(1) motion alleging a lack of subject matter jurisdiction, it provided the court with another affidavit and further exhibits. Thus, when the court heard both motions simultaneously, it had a fulsome record on which to base its rulings. Neither party indicated that it desired to present anything further. Accordingly, at the hearing on the motions, the court properly relied on the whole record before it in ruling. In these circumstances, we are not required to blinker ourselves from the realities of the case, as NVLSP would have us do.

\* \* \*

For the reasons given, we affirm the district court's ruling that it lacked subject matter jurisdiction.

AFFIRMED