# IN THE COURT OF APPEALS OF IOWA

No. 25-1220
Filed June 10, 2026

**Tammy Thompson, Scott Boylen, Alicia Mullarkey, Linda Appelgate, Larry A. Stone, Mary Damm, and Steve Veysey,**
Petitioners–Appellants,

v.

**Iowa Department of Natural Resources and Supreme Beef, LLC,**
Respondents–Appellees.

Appeal from the Iowa District Court for Clayton County,
The Honorable Richard D. Stochl, Judge.

**AFFIRMED**

James C. Larew (argued) of Larew Law Office, Iowa City, attorney for appellants.

Brenna Bird, Attorney General, Catherine Frappier (pro hac vice) (argued), Assistant Solicitor General, Eric Wessan, Solicitor General, and Patrick C. Valencia, Deputy Solicitor General, attorneys for appellee Iowa Department of Natural Resources.

Teresa B. Morio and Jackson C. Blais of Shuttleworth & Ingersoll, PLC, Cedar Rapids, attorneys for appellee Supreme Beef, LLC.

Heard at oral argument
by Tabor, C.J., and Chicchelly and Sandy, JJ.
Opinion by Sandy, J. Dissent by Tabor, C.J.

1

**SANDY, Judge.**

This appeal presents an unambiguous case of petitioners failing to first exhaust their administrative remedies in an administrative-appeal case before seeking judicial review. The petitioners (Thompson)[1] now ask our court to reverse engineer a disposition permitting them to circumvent that requirement and allowing their petition for judicial review to proceed on the merits. We decline to do so and affirm the district court's order granting the Iowa Department of Natural Resources' (DNR) motion to dismiss.

## BACKGROUND FACTS AND PROCEEDINGS

Supreme Beef, LLC runs cattle yards near a waterway known as Bloody Run Creek. The DNR granted Supreme Beef's corporate predecessor a water-use permit in 2017. The predecessor transferred the permit to Supreme Beef, and Supreme Beef applied to renew the permit in 2022. Following a public hearing, the DNR filed a notice of its decision to approve the permit renewal in June 2022. Thompson, concerned with Supreme Beef's proposed use of the water and the effects its cattle's waste would have on the water quality, appealed the initial permit renewal decision. Thompson expressed concern with the DNR's dismissal of public opposition and questions about the cattle operation's effects on the environment. The appeal proceeded to a contested case proceeding before the Iowa Department of Inspections, Appeals, and Licensing's Administrative Hearings Division.

---

[1] The petitioners, Tammy Thompson, Scott Boylen, Alicia Mullarkey, Linda Appelgate, Larry A. Stone, Mary Damm, and Steve Veysey, are all "residents of Iowa, with shared concerns about the environmental impact of Supreme Beef, LLC's" water-use permit in its "cattle operation located on the headwaters of Bloody Run Creek." For ease of reading, we collectively refer to the petitioners as "Thompson."

In November 2024, the administrative law judge issued a proposed decision. That proposed decision found that the DNR improperly characterized Supreme Beef's water usage as a per se beneficial use and thus had not properly considered all required factors in deciding whether to renew Supreme Beef's water-usage permit. The decision remanded the case back to the DNR for the department to fully articulate why a beneficial use exists or does not exist for Supreme Beef's water-usage-permit renewal. The proposed decision became final when it was not appealed.

On remand, the DNR issued a memorandum with its "final statutory analysis" on "whether [Supreme Beef's] proposed use is beneficial and consistent with Iowa law," and stating that "[t]he attached memo represents the final agency action pursuant to this case." The memorandum reaffirmed the DNR's prior proposed decision approving renewal of Supreme Beef's permit and found a beneficial use existed.

Thompson did not appeal to the DNR Environmental Protection Commission (EPC) and instead petitioned for judicial review in February 2025. Thompson argued the DNR's decision was an erroneous interpretation of law, not supported by substantial evidence, wholly irrational, and did not consider important matters that a rational decision maker would have considered. The DNR subsequently filed a motion to dismiss, contending that Thompson failed to exhaust administrative remedies by not appealing the remand decision to the EPC before petitioning for judicial review. The district court agreed, granting the motion to dismiss and concluding that the failure to exhaust administrative remedies deprived it of jurisdiction to consider the appeal's merits. Thompson now appeals that ruling.

## STANDARD OF REVIEW

We review the district court's dismissal of a petition for judicial review for correction of errors at law. *Paulson v. Bd. of Med. Exam'rs*, 592 N.W.2d 677, 678 (Iowa 1999).

## DISCUSSION

Thompson contends that the district court committed legal error in granting the DNR's motion to dismiss for failure to exhaust administrative remedies due to Thompson's failure to appeal the DNR's remand decision to the EPC.

Under Iowa Code section 17A.19(1) (2025), a party may seek judicial review if that party (1) "has exhausted all adequate administrative remedies" and (2) "is aggrieved or adversely affected by any final agency action." Our courts lack authority[2] to consider a petition for judicial review unless the aggrieved party has exhausted their administrative remedies. *Iowa Coal Mining Co. v. Monroe Cnty.*, 555 N.W.2d 418, 431 (Iowa 1996) ("[B]efore a party can call upon the court to act, the party must have exhausted any remedy available before an administrative agency."); *see also Pruess Elevator, Inc. v. Iowa Dep't of Nat. Res.*, 477 N.W.2d 675, 677–78 (Iowa 1991) (affirming

---

[2] Generally, the exhaustion-of-remedies requirement does not implicate subject matter jurisdiction. . . . Our legislature has given the district court subject matter jurisdiction to act in response to challenges to decisions made by administrative agencies, but requires this authority to be withheld until any available administrative remedies have been exhausted. Thus when a litigant requests judicial review before exhausting administrative remedies, the district court merely lacks authority to entertain a particular case.

*Keokuk Cnty. v. H.B.*, 593 N.W.2d 118, 122 (Iowa 1999) (internal citations omitted).

dismissal for failure to exhaust administrative remedies before seeking judicial review of DNR action).

"The exhaustion doctrine applies when (1) an adequate administrative remedy exists, and (2) the governing statute requires the remedy to be exhausted before allowing judicial review." *Shors v. Johnson*, 581 N.W.2d 648, 650 (Iowa 1998). Iowa Code section 455B.278 is the governing statute granting the EPC the power to create administrative remedies to the DNR's permit actions. Under section 455B.278(1), the EPC "shall adopt, modify, or repeal rules establishing procedures by which permits required under this part shall be issued, suspended, revoked, modified, or denied." Subsection (2) further permits an aggrieved party to appeal DNR actions to the EPC and requires that judicial review be sought from EPC appeal decisions.

Here, the DNR issued a remand decision following the EPC's remand of the DNR's initial final decision. Thompson immediately appealed that remand decision without first appealing to the EPC. Thompson does not argue that the exhaustion doctrine does not apply here, nor does she argue that an appeal to the EPC was unavailable to her. Instead, Thompson argues that she reasonably relied upon the DNR's representation that its remand decision was the "final agency action" and, by representing such, the DNR waived the defense of administrative exhaustion. In Thompson's view, the district court's dismissal permits agencies to characterize their "actions as final when convenient and then retreat from that characterization when challenged." Unfortunately for Thompson, this argument is based on an erroneous understanding of a final agency action's effect on remedy exhaustion.

5

Thompson's contention is that a final agency action, by virtue of being the agency's final action, exhausts all administrative remedies. But section 17A.19(1) contains two separate prongs which are delineated by the subsection's use of the word "and." Section 17A.19(1) states that a party is entitled to judicial review when it "has exhausted all adequate administrative remedies *and* . . . is aggrieved or adversely affected by any final agency action." (Emphasis added). Thus, being "aggrieved or adversely affected by any final agency action" is not alone sufficient to entitle Thompson to judicial review and does not, on its own, prove she "exhausted all adequate administrative remedies." True, an aggrieved party often has no further available administrative remedies once a final agency action is issued, as illustrated by a case Thompson cites in her brief. *See*, *e.g.*, *Klein v. Iowa Pub. Info. Bd.*, 968 N.W.2d 220, 230 (Iowa 2021) (finding administrative remedies exhausted where statute expressly stated the Iowa Public Information Board's final order was subject to judicial review). But unlike in *Klein*—where Iowa Code section 23.10(3)(d) permitted judicial review following the final agency action—Iowa Code section 455B.278 expressly provides for further administrative remedies following any DNR permit-related action. *Contrast* Iowa Code § 23.10(3)(d) ("A final board order . . . is subject to judicial review pursuant to section 17A.19."), *with id.* § 455B.278(2) ("Action by the [DNR] upon an application for a permit required under this part may be appealed to the commission by . . . any affected person . . . .").

Further, the DNR's description of the remand decision as the "final agency action" in its memorandum cover letter is not a basis for estoppel. *See Fennelly v. A-1 Mach. & Tool Co.*, 728 N.W.2d 163, 180 (Iowa 2006) ("We have consistently held equitable estoppel will not lie against a government agency except in exceptional circumstances." (citation omitted)). A "final agency action" is still an agency action, and section 455B.278 does not differentiate

between intermediate and final actions when authorizing appeals to the EPC. And it was not factually inaccurate to describe the remand decision as the final agency action. Absent an appeal, the agency would not have taken any further action. We are also unpersuaded by Thompson's argument that the DNR waived administrative exhaustion by describing the remand decision as a "final agency action." Such an interpretation would permit the DNR to circumvent review of its decisions by the EPC whenever it desires by labeling any future action as a "final agency action." Permitting the DNR to circumvent the very agency appeal process created by section 455B.278 would defeat the statute's stated purpose of giving the EPC the power to "adopt, modify, or repeal rules establishing procedures by which permits . . . shall be issued, suspended, revoked, modified, or denied." *See* Iowa Code § 455B.278(1).

Thompson cites no authority for her claim that an agency must make the procedural path clear so that "parties [can] follow it." The path is clear—it is expressly defined by statute, and Thompson was at all times represented by counsel to assist in her navigation of that path. Thompson marshals powerful policy arguments about what Iowa's environmental policy ought to be. But the question before us is not what the law should say; it is what the law does say. To weigh an appellant's arguments on the terms offered would require us to sit as philosopher-kings rather than as judges. *See Obergefell v. Hodges*, 576 U.S. 644, 717–18 (2015) (Scalia, J., dissenting) ("A system of government that makes the People subordinate to a committee of nine unelected lawyers does not deserve to be called a democracy."). We are not, and the redress Thompson seeks can be found in another building.

Because Thompson failed to exhaust her administrative remedies, we agree that the district court lacked authority to hear her petition for judicial review. We affirm.

**AFFIRMED.**

Chicchelly, J., concurs; Tabor, C.J., dissents.

**TABOR, Chief Judge** (dissenting).

"Final agency action" is a term of art. *See Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (describing the opportunity for judicial review when an agency reaches its ultimate determination of the parties' rights and obligations). Here, on remand from an administrative law judge (ALJ), the Department of Natural Resources (DNR) issued a memorandum that it deemed "the final agency action pursuant to this case." The majority believes that it was "not factually inaccurate" to use that label for the DNR's final action, even if it had to be reviewed by the Environmental Protection Commission (EPC) before it could be tested in court. I disagree and respectfully dissent.

Unlike the majority, I don't find this appeal to be "an unambiguous case" of failure to exhaust an administrative remedy. Indeed, the procedural history has unusual twists. The agency action at issue is a "final statutory analysis" drafted by Chad Fields, a geologist with the DNR. The analysis was in response to a remand order from ALJ Toby Gordon. In his proposed decision, Judge Gordon remanded Thompson's challenge to the renewal of Supreme Beef, LLC's water permit to the DNR "for the limited purpose" of considering "factors beyond the mere quantity of water" to be used by the cattle feeding operation. Contrary to the DNR's position, Judge Gordon found that livestock production was not a "per se" beneficial use under Iowa Code chapter 455B (2025). While Judge Gordon did not rescind the existing permit, he deferred a decision on the renewal pending the DNR's consideration of the proper factors. As the majority notes, neither the DNR nor Thompson appealed that remand decision within thirty days.[3] But the

---

[3] Thompson's counsel explained at oral argument that he did not appeal the ALJ's ruling because his clients believed that it was a victory for them.

DNR's memorandum—titled "Supreme Beef Beneficial Use Analysis"—drafted by geologist Fields (purportedly representing "final agency action") was not sent to Thompson until more than a month after the appeal deadline had expired.[4]

It's unclear that releasing Fields's analysis to Thompson was "[a]ction by the department upon an application for a permit" as that phrase is used in Iowa Code section 455B.278(2). It was not framed as a freestanding renewal of Supreme Beef's water permit. It was solely the articulation of the DNR's reasoning for its earlier renewal decision that was never fully resolved by Judge Gordon.

Likewise, it is unclear whether the contested case before Judge Gordon was an appeal to the EPC under section 455B.278(2). The district court, in dismissing Thompson's judicial review petition, believed that the ALJ's proposed decision—not appealed—was "a final decision of the Iowa Environmental Protection Commission." The district court adopted that language from the DNR's motion to dismiss. In that motion, the DNR added that "neither party took judicial review from the EPC's final decision." But at oral argument, the DNR's counsel asserted that the permit renewal question had not yet been to the EPC. The DNR's counsel clarified that parties can also obtain an ALJ hearing by appealing to the director under regulatory authority (rather than by statute to the EPC), and this case was "technically an appeal" to the director.[5] On top of those imprecise positions,

---

[4] Curiously, Fields's memorandum was dated January 21, 2025, while the cover letter addressed to Thompson's counsel was dated five days earlier, January 16, 2025.

[5] Under Iowa Administrative Code rule 561-7.17(8), a party adversely affected by a final decision or order may petition the agency for a stay of the final decision or order pending judicial review.

the DNR's counsel agreed at oral argument that if Thompson—after receiving Fields's analysis—had asked for the matter to return to Judge Gordon, "that could have happened."

So which route was Thompson to take? Assume the memorandum was action on a permit and appeal to the EPC under section 455B.278(2)? Assume that the permit renewal was still pending and ask for the matter to return to the ALJ to complete the remand process? Or seek judicial review because the DNR said it had taken "final agency action pursuant to this case"? The choice was far from obvious.

The requirement that a party exhaust administrative remedies before seeking review of a final agency action in the courts is not meant to be a game of gotcha. *See McFadden v. Dep't of Transp.*, 877 N.W.2d 119, 121 (Iowa 2016) (emphasizing that our legal system prefers to resolve disputes on their merits, and dismissing an action for failure to exhaust administrative remedies does not resolve the case on the merits). Given the unusual procedural history of this matter before the DNR, I believe that we should remand to the district court with directions to return the case to the agency for final action on Supreme Beef's permit renewal. *See Christiansen v. Iowa Bd. of Educ. Exam'rs*, 831 N.W.2d 179, 191 (Iowa 2013) (excusing prematurely filed petition for judicial review based on these unique facts and lack of prejudice to the State).

Finally, I'm unpersuaded by the majority's reliance on a dissenting opinion from the landmark U.S. Supreme Court decision on marriage equality. Recognizing the confusing characterization and suspect timing of the DNR's action would not turn us into philosopher kings and queens. We would not endanger democracy by giving citizens a chance to have their

administrative challenge heard on the merits. A more fitting description comes from our own supreme court:

> [R]ights must not be denied by too strict an application of mere legal formality. The sword of Justice is not often made more keen by the whetstone of technicality, and a right secured by too rigid means may harden into a wrong. . . . Not only must justice appear to be done, but it is the function and duty of this court and of all courts to see that it is done. Technicality should not become a Pegasus which, if ridden by an expert legal jockey, may carry us far from the true goal.

*McFadden*, 877 N.W.2d at 123–24 (citing *McMillan v. Osterson,* 191 Iowa 983, 985, 183 N.W. 487, 488 (1921)).